

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



RECEIVED
12-1-13
DEC 2 2013
Dec 2. 2013 MB
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Stanley Buclair Abdasi

---
---
---

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

13CV8630
JUDGE THARP
MAGISTRATE JUDGE MASON

vs.

Salvador A. Godinez,
Michael A. Lemke, Terri Anderson,
Marcus Hardy,
Ada Johnson, Karen Marie Rabideau,
Donald Williams,
Kenneth Nushardt, Tyrus Lazard,
John Sievers,
Brandon Franco, Michael Bowlin,
Lorence, (AKA Unknown/Florence)
Lester Hawk, Cervantes,
Montes,
Buckhart, Vegara *

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No:_____
(To be supplied by the Clerk of this Court)

**CHECK ONE ONLY:**

___✓___ **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code** (state, county, or municipal defendants)

_____ **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code** (federal defendants)

_____ **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

* The first names of Defendants Lorence, Cervantes, Vegara, Buckhart and Montes are
Unknown to Plaintiff at this time, but will be forthwith provided to this Court as soon as
Reasonably possible upon Discovery thereof.

I.    **Plaintiff(s):**

    A.    Name: Stanley Boclair

    B.    List all aliases: Stanley Stancel

    C.    Prisoner identification number: A-60451

    D.    Place of present confinement: Stateville Correctional Center

    E.    Address: Joliet, Il. 60434   Box 112

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.   **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank.  Space for two additional defendants is provided in **B** and **C**.)

    A.    Defendant: Salvador A. Godinez

        Title: Director

        Place of Employment: Illinois Department of Corrections

    B.    Defendant: Terri Anderson

        Title: Chairperson - Administrative Review Board

        Place of Employment: Illinois Department of Corrections

    C.    Defendant: Michael Lemke

        Title: Warden

        Place of Employment: Stateville Correctional Center

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

A. Defendant: Marcus Hardy

Title: (FORMER) Warden — Stateville Corr. Center

Place of employment: IDOC

B. Defendant: Ada Johnson

Title: Correctional Counselor

Place of employment: Stateville Correctional Center

C. Defendant: Karin Marie Rabideau

Title: Correctional Counselor

Place of employment: Stateville Correctional Center

D. Defendant: Donald Williams

Title: Lieutenant, (FORMER) Sargeant

Place of employment: Stateville Correctional Center

E. Defendant: John Sievers

Title: Sargeant

Place of employment: Stateville Corr. Center

F. Defendant: Tyrus Lazard

Title: Corr. Officer

Place of employment: Stateville Corr. Center

G. Defendant: Kenneth Nashwardt

Title: Correctional Officer

Place of employment: Stateville Corr. Center

H. Defendant: Brandon Franco

Title: Correctional Officer

Place of employment: Stateville Correctional Center

I. Defendant: Buckhart

Title: Correctional Officer

Place of employment: Stateville Correctional Center


J. Defendant: Cervantes

Title: Corr. Officer

Place of Employment: Stateville Corr. Center


K. Defendant: Vedara

Title: Corr. Officer

Place of employment: Stateville Corr. Center


L. Defendant: Michael Bowlin

Title: Corr. Officer

Place of employment: Stateville Corr. Center


M. Defendant: Lester Hawk

Title: Corr. Officer

Place of employment: Stateville Corr. Center


N. Defendant: Montes

Title: Corr. Officer

Place of employment: Stateville Corr. Center


O. Defendant: Lorence (aka unknown or Florence)

Title: Corr. Officer

Place of employment: Stateville Corr. Center

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: _Stanley Boclair v. Michael Randle, et al., No. 11 C - 5217_

B. Approximate date of filing lawsuit: _August 1, 2011_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _____
_Stanley Boclair AKA Stanley Stancel_

D. List all defendants: _Michael P Randle, Guy D. Pierce, Gladise C. Taylor, Marcus Hardy, Teneea Butler-Winters, Ralph Burkybile, Nelson Holman, Gerardo Alvarez, Jada Johnson, Karen Marie Rabideau, Liliuokalani Streeter Thomas, Jill Hosselton, Salvador A. Bodinez and Terri Anderson_

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _U.S. District Court Northern District of Ill. Eastern Division_

F. Name of judge to whom case was assigned: _Judge John J. Tharp - Referred to Magistrate Judge Mason_

G. Basic claim made: _Failure to Protect_

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Settlement Agreement_

I. Approximate date of disposition: _August 10, 2013_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

III. List all lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: Stanley Boclair v IDOC, Roger Walker, Jr., Donald Hulick, Tina Beardan Monroe, Bradley Sadler, Kim Butler, Tom Maue, Darrell Westerman, Dan Liefer and unknown Party, Docket # 10-978-NCW

B. Approximate date of filing lawsuit: December 13, 2010

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: Stanley Boclair AKA Stanley Stancel

D. List all defendants: IDOC, Roger Walker, Jr., Donald Hulick, Tina Beardan Monroe, Bradley Sadler, Kim Butler, Tom Maue, Darrell Westerman, Dan Liefer and unknown Party.

E. Court in which the lawsuit was filed: United States District Court Southern District of Illinois

F. Name of judge to whom case was assigned: Michael J. Reagan, referring case to Magistrate Judge Stephen C. Williams

G. Basic claim made: Deprivations of Constitutional rights

H. Disposition of this case: Judgment Defendants

I. Approximate date of disposition: October 8, 2013

III. List all lawsuits you (and your co-plaintiffs, if any) have filed in any state or Federal Court in the United States:

A. Name of case and Docket number: Stanley Boclair v Page, Snyder, Tucker, Lyerld, Atchison and Scott, Docket # 99-233

B. Approximate date of filing lawsuit: April 5, 1999

C. List all plaintiffs including any aliases: Stanley Boclair aka Stanley Stancel

D. List all defendants; Thomas Page, Donald Snyder, Jr., Nancy Tucker, Doug Lyerld, Michael Atchison and M.S. Scott

E. Court in which the lawsuit was filed: U.S. District Court Southern District of Illinois

F. Name of Judge to whom case was assigned: Judge G. Patrick Murphy

G. Basic claim made: Placed in segregation without due process

H. Disposition of this case: Dismissed

I. Approximate date of disposition: August 16, 1999

    Now comes the Plaintiff, Stanley Boclair, pro se, and in support of his complaint states as follows:

    1. This cause is brought due to callous indifference to the safety of

a ward of the state. Defendants have a duty to protect Plaintiff Stanley Boclair from known dangers to his life and limb, and to provide somewhat decent sanitary toilet facilities and living conditions. Despite being aware of such dangers and conditions, Defendants, acting under color of law, ignored them and continue to put Plaintiff at risk of assault after allowing Plaintiff to fall victim to multiple assaults in the past, (Stanley Boclair v. Marcus Hardy, et al., - 11 - c - 5217, Settlement Agreement August 10, 2013) and impose conditions upon Plaintiff that deprive him of basic human needs (See, exhibits A, B, C, d, e, F), each foreseeable and preventable, subjecting him to substantial physical risk and psychological trauma amounting to cruel and unusual punishment.

2. Most Recently, Plaintiff was removed from the general population to the protective custody unit (See, exhibit _ G) and only six days later defendants returned Plaintiff to general population informing Plaintiff, though they knew it would get them in legal trouble, Plaintiff was not allowed to request protection in the prison. See (exhibit _ H). Defendants continue to place Plaintiff side_by_side with violent Security Threat Group (STG) members whom they are aware attacked Plaintiff and IDOC officials in the past.

3. The Current Cells in F House of general population, where Plaintiff is assigned required Plaintiff to insulate his cell from inclimate weather by tearing strips from his bath towel, spreading toothpaste upon those and sticking them between the window frame and building. Toilets and Sinks are in constant disrepair requiring inmates from all four galleries in the cellhouse to get an officers permission and at his discretion be taken outside the cell to attend those basic needs. These incidents are described in detail below.

4. In addition, Defendants have retaliated against the Plaintiff for his attempt to employ the IDOC grievance System in accordance with regulations

governing inmates.

5. Plaintiff Boclair brings this complaint pursuant to 42 U.S.C. § 1983 and the laws of the State of Illinois to redress these violations including those under the first, eight, and fourteenth amendments to the United States Constitution. Plaintiff also brings claims for prospective injunctive relief against Defendants in their official capacities to remedy ongoing violations of federal law.

6. Plaintiff Boclair seeks compensatory and punitive damages from the Defendants; a judgment declaring the Defendants' acts unconstitutional; and a permanent injunction prohibiting Defendants from housing him with certain members of the IDOC's general population or otherwise endangering his safety, and requiring them to timely process his grievances.

## Jurisdiction and Venue

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 (a).

8. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 (b)(2) because Plaintiff resides at Stateville Correctional Center (Stateville) which is located in this District, and all of the events giving rise to Plaintiff's claims occurred in this District.

## The Parties

9. Plaintiff Stanley Boclair is an inmate currently incarcerated by the IDOC at the Stateville Correctional Center (Stateville) in Crest Hill, Illinois. He has been

Incarcerated since 1981 and is 56 years old.

10. Defendant Salvador A. Godinez is the current Director of IDOC and responsible for day-to-day operations of the IDOC. He is responsible for the organization and supervision of all state-run correctional facilities in Illinois and for the final disposition of all inmate grievances. He has personal firsthand knowledge of the allegations described herein. Defendant Godinez is sued in his individual and official capacities.

11. Defendant Michael A. Lemke was, at all times pertinent to the allegations in this complaint, warden of the Stateville Correctional Center and responsible for the disposition of all grievances filed by the inmates at that facility. He has personal firsthand knowledge of the allegations in this complaint and, despite such knowledge, has failed to remedy the widespread practices described herein. Defendant Lemke is sued in his individual and official capacities.

12. Defendant Terri Anderson was, at all times pertinent to the allegations in this complaint, Chairperson of the IDOC Administrative Review Board. She is responsible for evaluating all inmate grievances and appeals and submitting reports and recommendations to the IDOC Director for the final disposition of such appeals. She has personal firsthand knowledge of the allegations in this complaint. Defendant Anderson is sued in her individual and official capacities.

13. Defendant Marcus Hardy served as warden of Stateville Correctional Center from _____ to _____. During this time he was responsible for the disposition of all grievances filed by the inmates of that facility. He has personal firsthand knowledge of the allegations in this complaint and, despite such knowledge, has failed to remedy the widespread practices described herein. Defendant Hardy is sued in his individual capacity.

14. Defendant Placement Officer Ada Johnson was a Placement at Stateville Correctional Center. She was responsible for the evaluation of all inmates before placement in cells, work details, and living units. She has personal firsthand knowledge of the allegations in this complaint. Defendant Johnson is sued in her individual capacity.

15. Defendant Placement Officer Karin Robideau approved of Plaintiff's cell and living unit assignments while housed at Stateville. She has personal firsthand knowledge of the allegations in this complaint. Defendant Robideau is sued in her individual and official capacity.

16. Defendant John Sievers was, at all times pertinent to the allegations in this complaint a correctional sargeant at Stateville Correctional Center. He has personal firsthand knowledge of the allegations in this complaint. Defendant Sievers is sued in his individual and official capacity.

17. Defendant Donald Williams was, at all times pertinent to the allegations in this complaint a correctional sargeant at Stateville Correctional Center. He has personal firsthand knowledge of the allegations in this complaint. Defendant Williams is sued in his individual and official capacity.

18. Defendant Tyrus Lazard was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. He has personal firsthand knowledge of the allegations in this complaint. Defendant Lazard is sued in his individual and official capacity.

19. Defendant Nushardt was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. Defendant Kenneth Nushardt has personal firsthand knowledge of the allegations in this

complaint. Defendant Nushardt is sued in his individual and official capacity.

20. Defendant Brandon Franco was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. Defendant Franco has personal firsthand knowledge of the allegations in this complaint. Defendant Franco is sued in his individual and official capacity.

21. Defendant Buckhart was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. Defendant Buckhart has personal firsthand knowledge of the allegations in this complaint. Defendant Buckhart is sued in his individual and official capacity.

22. Defendant Cervantes was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. Defendant Cervantes has personal firsthand knowledge of the allegations in this complaint. Defendant Cervantes is sued in his individual and official capacity.

23. Defendant Vegara was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. Defendant Vegara has personal firsthand knowledge of the allegations in this complaint. Defendant Vegara is sued in his individual and official capacity.

24. Defendant Michael Bowlin was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. Defendant Bowlin has personal firsthand knowledge of the allegations in this complaint. Defendant Bowlin is sued in his individual and official capacity.

25. Defendant Lester Hawk was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. Defendant

Hamik has personal firsthand knowledge of the allegations in this complaint. Defendant Hamik is sued in his individual and official capacity.

26. Defendant Montes was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. Defendant Montes has personal firsthand knowledge of the allegations in this complaint. Defendant Montes is sued in in his individual and official capacity.

27. Defendant Lorence was, at all times pertinent to the allegations in this complaint a correctional officer at Stateville Correctional Center. Defendant Lorence has personal firsthand knowledge of the allegations in this complaint. Defendant Lorence is sued in her individual and official capacity.

## Factual Allegations

I. Plaintiff Boclair has repeatedly been housed in condemn cells with massive infestations of cockroaches while at Stateville and the totality of such conditions create an overall effect that is unconstitutional.

28. Stateville Correctional Center is a level-1 maximum security facility maintained by the IDOC in Crest Hill, Illinois.

29. F cellhouse, built in the beginning of the 20th century is an historic designated landmark in the Illinois registry, and upon information and belief, the toilets, heaters and windows do not function on a daily basis in 65% of the cells. A 12-inch heater is three inches from the floor beneath a double countertop, below windows that will not close shut.

30. Since August 10, 2010, Plaintiff has been primarily housed in these cells while there has been no warmth during the winter and fall, cockroaches in contact

with Plaintiff in every natural, normal or proper place within the cell, and upon information and belief, more than seven months will past before any exterminating takes place with watered down and ineffective chemicals.

31. For example, on November 23, 2011, though Defendants had knowledge cell #461 was in disrepair Plaintiff was housed there in the dead of winter for four weeks.

32. While four stories up a slight wind would rattle the windows pushing in inclement weather which a simmering heater could not off-set, high winds made the cell into a freezer. See, (exhibit_A).

33. Plaintiff filed an emergency grievance with Defendant Hardy Stateville Grievance # 4356) on November 25, 2011. See, (exhibit_C).

34. Defendant Hardy deemed the conditions Plaintiff lived under in Cell #461 not to be an emergency so Plaintiff submitted his grievance through the counselor who returned grievance # 4356 on December 21, 2011, and on December 27, 2011, Plaintiff filed his grievance with the grievance officer where it remains over two years without response.

35. Plaintiff's grievance to the Administrative Review Board ARB over the non-compliance of Stateville's grievance officer with the provisions of 20 Ill. Adm. Code 504. 830 (A) has gone over eighteen months without any adequate response. See, (exhibit_H).

36. Similarly, Plaintiff's concerns to Defendant Godinez that the ARB was not in compliance with the provisions of 20 Ill. Adm. Code 504. 850 (F) has gone over a year without an adequate response to Plaintiff emergency grievance # 4356. See, (exhibit_I).

37. Defendant Johnson, having moved Plaintiff into cell #461 because he

complained in grievances of the physical risk to his well being in his previous cell, on January 13, 2012, informed Defendant Lazard she had found Plaintiff a cell.

38. Cell # 209 in F. House, where Defendant Lazard placed Plaintiff on January 13, 2012, had been a well established Condemn cell over Two Months.

39. There was no lighting in Cell # 209. The sink water would go directly into the toilet and overflow. When the toilet was flushed, water wouldn't flood the cell. Defendant Lazard stating, "This doesn't work," but doing nothing else when Plaintiff complained.

40. The next day, January 14, 2012, inmate Plummer (Dixon A-74131) saw the Plaintiff pouring waste (feces and urine) out the window, which had flooded the toilet and cell floor. Defendant Lazard was alerted, allowed the toilet to be vacuumed and put Plaintiff back in the cell though Plaintiff begged to be given a cell with operating facilities. See, (Exhibit D).

41. On January 15, 2012, Defendant Nusshardt opened the cell door to place inmate (Brown N-71517), inside the cell with Plaintiff, telling Plaintiff, "He had no choice" after taking his flashlight and examining more than one and a half inches of waste-water upon the floor and an over-flowing toilet, when Plaintiff pleaded with him to consider the conditions for two people, not just one. See, (Exhibit D).

42. The next morning, January 16, 2012, Defendant Lazard noticed the stairway from one and two, the gallery floor from cells 1 to 17 on two gallery, and the ramp leading to the basement was inundated in water, urine and excrement from the toilet which would not stop flushing. Defendant Lazard angrily scolded Plaintiff and inmate Brown for using the toilet.

43. At approximately 4:00 a.m. on January 16, 2012, Defendant Franco came to cell # 209 and handcuffed Plaintiff behind his back wearing only a boxer shorts, shoes and pants,

While receiving an order over the radio from Defendant Sievers to put both Plaintiff and inmate Brown inside an empty shower, where both Plaintiff and Brown remained until 2:00 A.M. See, (exhibit-D).

44. The temperature on this day, January 16, 2012, did not rise above the upper 20's. The shower had a cracked ventilated window, Plaintiff was left shivering from the cold and in excruciating pain from the long hours while his hands cuffed from behind.

45. Within three hours of being put back into cell #209 on January 16, 2012, Defendants Buckhart, Vegara and Cervantes came to Plaintiff cell along with Defendant Williams, upon discovering Plaintiff's toilet would not stop flushing and over-flowing the gallery, removing Plaintiff and inmate Brown with hands in the front, cuffed, and ordering both to mop the gallery dry of the waste for nearly an hour. See, (exhibit-D).

46. Defendants complained of Plaintiff "not thinking about them" as they (Buckhart, Vegara and Cervantes) oversaw the cleaning of the gallery, with defendant Williams threatening Plaintiff with, "you better not touch anything in the cell" See, (exhibit-D)

47. Plaintiff submitted an emergency grievance regarding placement in a condemn cell to Defendant Hardy (exhibit-D) who deemed those conditions and treatment of Plaintiff were an emergency.

48. In submitting the grievance by the normal process Plaintiff's counselor was non-responsive to any of Plaintiff's alleged abuses (exhibit-D) while the grievance officers bald assertion that Plaintiff was never placed in cell #209 defies reality. See, (exhibit-D1 and D2).

49. A "completed work order" is a document informing the Maintenance department work is needed for a location in disrepair. The ARB admit two orders were completed

for cell # 209 only after Plaintiff was removed from the cell, see, (exhibit B3).

50. Defendants Hardy and Johnson were well aware of the treatment and deplorable living conditions to which they confined Plaintiff, only three days prior to placing Plaintiff in cell # 209, by housing him in a cell inundated with cockroaches in the bed being killed as he slept, wetting sheets and underwear, dropping from the ceiling into the food when eating. See, (exhibit A).

51. On January 10, 2012, Plaintiff filed an emergency grievance with defendant Hardy regarding the massive infestation of cockroaches in his cell which was rejected as an emergency and later given to his counselor and the grievance officer who were both non-responsive to Plaintiffs complaint of the incineration of cockroaches in his living area. See, (exhibits a and a 1).

52. On May 23, 2013, the ARB determined there was no justification for any consideration of Plaintiff's grievance because Plaintiff was living in cell # 126, though the number on the cell never changed the deplorable conditions to which Plaintiff was confined by Defendants for nearly eight months, (November 25, 2011 to June 22, 2012).

53. Exhibits (E and F) attest to the condition inside cells on either side of cell 126 and in fact throughout the entire F. House, including cell #126.

54. Upon information and belief, inmate (Tatum A80739) is one among many of the inmates in F. House given disciplinary reports for disturbance when calling out for an officers attention because there were no functioning toilet or sink within the cell when an inmate needed to use those facilities.

Il. Plaintiff Kochia has repeatedly requested protection by IDOC officials

Since October 1, 2007.

55. Plaintiff used to be affiliated with the Gangster Disciples gang but renounced his former lifestyle and ceased all involvement with gangs in or about 2006. Since then, the Gangster Disciples have made clear their intention to cause him harm. Such threats began when Plaintiff was housed at Menard and Pontiac Correctional Facilities and have continued at Stateville. Plaintiff is not physically capable of defending himself against violent inmates who are much younger than him and have the backing of dangerous gangs.

56. Defendants were aware that the Plaintiff was endangered by members of Gangster Disciples fractions including the Black Gangster Disciples (BGDs) and Black Disciples (BDs) (collectively, the "Disciples").

57. BGD and BDs are classified Security Threat Groups (STGs) by the IDOC.

58. Plaintiff filed a lawsuit in the United States District Court for the Northern District of Illinois, Eastern Division. entitled Stanley Boclair v. Michael Randle, et al., no. 11. C. 5217, alleging violations of rights protected by statute, regulation, common law, the constitution of the state of Illinois and the constitution of the United States.

59. Plaintiff alleged that Defendants Hardy, Johnson, Rabideau, Anderson and Gortinez a.) left him to fend for himself despite having knowledge of threats of violence against him; b.) the protective custody policy of Stateville officials and protective custody cells placed Plaintiff in danger; and c.) Defendants retaliated against Plaintiff by denying law library access necessary to file grievances and appeals.

60. In Boclair v. Randle, Plaintiff suffered actual injuries. On February 1, 2011 while on Stateville yard Plaintiff was knocked to the ground and kicked in the head until he lost consciousness, leaving a golf ball-sized knot on his head and multiple

contusions. Plaintiff had to be hospitalized for four days. On December 22, 2011, while inside a protected custody cell Plaintiff was physically assaulted with a sock full of batteries suffering several serious injuries including lacerations on his face and head.

61. On August 10, 2013, Plaintiff Boclair signed his settlement agreement and general release with regard to Defendants Hardy, Johnson, Rabideau, Anderson and Godinez.

62. Though Plaintiff signed his settlement agreement August 10, 2013, the settlement conference was July 11, 2013.

63. Nineteen days after the settlement conference, on July 30, 2013, Plaintiff was removed from general population and put in an isolated designated protected custody area of the prison (x-house), though Plaintiff most recent P/C request was March 17, 2013. See, exhibits (q and p).

64. Six days after being placed in the P/C unit, Defendants Lemke and Rabideau returned Plaintiff to general population on August 5, 2013, in violation of 20 Ill. adm. Code 501.320 (d)(2), while Defendant Anderson did not review Plaintiff P/C appeal until August 12, 2013. See, (exhibits q) and w)

65. On August 23, 2013, Defendant Hawk was given Plaintiff protective custody request document dated August 22, 2013, after informing Plaintiff he did not consider Plaintiff a P/C inmate but would deliver Plaintiff's P/C request to Internal affairs or Plaintiff Counselor. See, (exhibits k, L and w).

66. Defendant Bowlin, when informed on August 23, 2013, Plaintiff was directly notifying him of Plaintiff P/C request in accordance with 20 Ill. adm. Code 501.320 (a) Defendant Bowlin told Plaintiff, "I know I'll get in lead trouble, but you are not allowed to request protective custody." See, (exhibits k, L and w).

67. On August 23, 2013, Defendant Montes, when informed under the provisions of 20 Ill. Adm. Code 501.320 (a) Plaintiff was requesting protective custody replied, "I already know, Internal Affairs knows and the Placement office knows and you are not allowed to request protective custody while in Stateville". See (exhibits - K, L and W).

68. Apparently, Defendant Anderson, on August 21, 2013, rejected Plaintiffs appeal of his request for P/C placement, falsely claiming among other specifics, that Plaintiff's claim of threats on his life for the gang-related killing of inmate Riley C - 02302 "has not been substantiated by the ARB" though the ARB report nowhere mentions the threat, first-ever disclosed in Plaintiff's March 17, 2013, P/C request, which was the basis of the ARB report. In her decision, Defendant Anderson states, "Boclair has been seen by the board several times in the past" failing to detail after each P/C request an assault or threat of assault came upon Plaintiff solely by the acts of Defendants Anderson and Godinez, who, along with Defendant Lemke, denied Plaintiff's March 17, 2013, P/C request without even reviewing the threat (see, exhibit P, marked "facility decision,") on June 26, 2013. Though Defendant Anderson made the bold claim, "In accordance with DR 501.330 Stateville Correctional Center conducted a review of offender's P/C request." Defendant Godinez concurred with Anderson's decision despite Anderson and Godinez's knowledge of assaults and threats upon Plaintiff.

69. Instead of allowing Plaintiff the full benefits of 20 Ill. Adm. Code 501.300, 501.305, 501.310, 501.320, 501.330, 501.340 and 501.350, which Defendants Godinez, Lemke and Anderson are entirely responsible for implementation of to protect inmates like Plaintiff from the violent assaults he suffered in the past, it is part of Defendants custom and practice to retaliate against Plaintiff and, on information and belief, other inmates, for asserting their rights through the IDOC grievance process, blatantly ordering IDOC staff and employees not to process any request for protection by Plaintiff from violent (S.T.G.'s) whose grievance

is widespread and pervasive within the IDOC.

70. Defendants Godinez, Lemke and Anderson lied, through their attorney's on July 11, 2013, during a settlement conference when Federal Magistrate Mason inquired directly of litigation counsel for IDOC Edward Huntley and assistant Attorney General James P. Doran, "Why hasn't Mr. Boclair been given P/C?" Both Huntley and Doran replying, "under the provisions Mr. Boclair may request P/C and immediately be removed from general population, if his request is ultimately denied, he may request it again, he does not have to remain in general population. See, (exhibit M).

71. Under 20 Ill. Adm. Code 501.320 Plaintiff submitted a P/C request document to Defendants Sievers and Lorence on September 3, 2013. Again, no process under provision, State constitution or Federal Constitution has been implemented. See (exhibit N).

72. On October 3, 2013, Plaintiffs counselor, Kim Duvall, informed Plaintiff, with her regret, "you know who are the only people that can tell us not to send you to the P/C unit."

73. Plaintiff was cautioned, that since the later part of September 2013, inmate Jarvis "Jiro" Jackson, a known BGD (STG) member, was encouraging other gang members to "hit Boclair," for the murder of Thomas Riley.

74. On October 01, 2013, while Plaintiff was returning from evening feed in the dinning room three BGD's threatened to throw Plaintiff off 3-gallery. ("Big-A"-cell 356),("Wild Wild"-cell 357) and ("Coo"-cell 354) were all known STG members by defendant Rabideau who placed them in these cells after October 7, 2013, when all were released from Segregation for conducting 'STG' activity. Defendant Rabideau maintained Plaintiff in cell 360. See (exhibit P).

75. Immediately upon three gallery being sent to the recreation the next day, November 1, 2013, Plaintiff did not return to his cell, instead refusing housing in general population and requesting to be taken to the segregation area for his protection.

76. Defendant Rabideau assigned Plaintiff a "condemn" cell (219) with no heat and busted open windows in Segregation.

77. On August 25, 2013, Plaintiff filed a grievance to Defendant Godinez when defendants Hawk, Bowlin and Montes informed Plaintiff he was not allowed to request P/C. On September 18, 2013, the ARB decided no consideration would be given to Plaintiff not being allowed to make those P/C request. See, (exhibits K and K-1).

78. On August 25, 2013, Plaintiff filed emergency grievance # 2709 with defendant Lemke, concerning defendants Hawk, Bowlin and Montes telling Plaintiff he was not allowed to request P/C. See, (exhibit L).

79. On September 12, 2013, Defendant Lemke rejected grievance # 2709 as an emergency and told Plaintiff to submit it in the normal process.

80. On September 18, 2013, Counselor Duvall received and responded to grievance # 2709, no action was taken on Plaintiff P/C request.

81. On September 29, 2013, Plaintiff submitted grievance # 2709 with the grievance officer where it has remained past the expiry provisions of 20 Ill. Adm. Code 504.830(4).

82. On September 29, 2013 Plaintiff submitted emergency grievance #3086 with Defendant Lemke concerning defendants Sievers and Lorence refusal to process Plaintiff's September 3, 2013, P/C request document. See, (exhibit N).

83. On October 11, 2013, Defendant Lemke Rejected grievance # 3080 as an Emergency and told Plaintiff to submit it in the normal process.

84. On October 31, 2013, Plaintiff submitted grievance # 3080 with Counselor Duvall explaining his reason for refusing housing in general population. On November 14, 2013, Plaintiff received a response, his request have not gone on ignored. See (exhibits N and X).

85. On November 15, 2013, Plaintiff submitted grievance # 3080 to grievance officer. No IDOC official has actually done anything to protect Plaintiff.

86. Plaintiff has continued to file numerous grievances regarding intimidation and threats of physical assault by violent STG members. IDOC officials have continued to either deny Plaintiff's request for P/C (since August 23, 2013, Plaintiff is not even allowed to request protection) and his grievance appeals without any basis in law or fact or fail to process and respond to them at all.

87. Despite regulations governing IDOC's grievance process, the actual grievance process at Stateville is not employed to provide an effective way for inmates to communicate their safety concerns, complaints and fears to IDOC officials. Officials prefer to deny grievances based on purported procedural defects and technicalities rather than to address legitimate threats to inmates safety. Defendants refusal to acknowledge actual threats to Plaintiff and failure to respond adequately to grievances is part of Defendants' ongoing custom and practice of retaliating against Plaintiff and, on information and belief, other inmates, for asserting their rights through the IDOC grievance process.

## Claims for Relief

### Count I

(Against Defendants Godinez, Hardy, Robideau, Johnson, Lazard, Washardt,

Sievers, Franco. Williams, Buckhart, Ceavantes and Vegara)

Infliction of cruel and unusual punishment and retaliation in violation of the Eight Amendment by intentionally Housing Plaintiff in Condemn cells.

88. Plaintiff repeats and realleges Paragraphs 1 through 87 as though fully set forth herein.

89. Defendants acted with deliberate indifference to deprive Plaintiff of basic human needs in his living conditions.

90. By housing Plaintiff in known Condemn Cells where extreme cold inundated the air, feces and urine deluged the floor for days and a massive infestation of cockroaches constantly prevailed in a totality of conditions from November 25, 2011, until June 22, 2012, Defendants acted with deliberate indifference to the known and serious risk for injury then and in the future. Because of Defendant reckless disregard of Plaintiff living conditions Plaintiff continues to suffer deep psychological trauma.

91. Plaintiff has exhausted his administrative remedies with respect to his grievances regarding deprivations of shelter and basic human needs due to the conduct of Defendants.

92. Defendants refused to provide Plaintiff with decent prison conditions, among other reasons, in retaliation for Plaintiff's history of asserting his rights and filing grievances, which often name IDOC officials, describing their violation.

93. The Reckless disregard of Defendants for Plaintiff's safety, under color of law and without justification, constituted deliberate indifference to an objectively

serious and subjectively known danger posing a substantial risk of serious harm to Plaintiff and amounts to cruel and unusual punishment in violation of the eight and fourteenth amendments to the U.S. constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully request the following relief:

A. General damages against each Defendant, jointly and severally, in an amount not less than $ 20,000.00 each.

B. An award of punitive damages against each individual Defendant in an amount appropriate to punish each individual and deter others from engaging in similar misconduct;

C. attorney's fees, cost, and expenses as authorized by 42 U.S.C. § 1988 and as otherwise authorized by statute and law;

D. A permanent injunction prohibiting Defendants from retaliating against Plaintiff and other provide him safe and somewhat decent prison conditions;

E. Any other relief that this Court may deem just and proper.

## Count II

(Against Defendants Godinez, Lemke, Anderson, Rabideau, Hawk, Bowlin, Montez, Lorence and Sievers)

Infliction of cruel and unusual Punishment and retaliation in violation of the eight amendment by intentionally ignoring threats by STG members

94. Plaintiff repeats and realleges paragraphs 1 through 93 as though fully stated herein.

95. Defendants acted with deliberate indifference to known and substantial risks to Plaintiff by repeatedly denying and, ultimately refusing to allow, Plaintiff's request for protection from STG members who have consistently threatened and harassed and assaulted him, since he denounced gang violence and left his former lifestyle behind.

96. Plaintiff was subjected to a death threat on October 31, 2013, when STG members stated they would "throw him off 3 gallery" in connection with the death of another inmate.

97. Plaintiff has exhausted his grievances in regard to his P/C request when Defendants refused to even review this threat in the March 17, 2013, P/C document and the August 21, 2013, ARB denial of his appeal.

98. As a direct result of Defendants' non-action, Plaintiff life is in present danger.

WHEREFORE, Plaintiff respectfully request the following relief:

A. General damages against each Defendant, jointly and severally, in an amount not less than $20,000.00 each.

B. An award of punitive damages against each individual Defendant in an amount appropriate to punish each individual Defendant and deter others from engaging in similar misconduct;

C. Attorney's fees, cost and expenses as authorized by 42 U.S.C. § 1988

and as otherwise authorized by statute or law;

D. a permanent injunction prohibiting Defendants from retaliating against Plaintiff for exercising his rights and requiring Defendants to place Plaintiff in protective custody and otherwise protect him from known and reasonably foreseeable threats including STGs whose members have expressed a desire to harm him;

E. any other relief that this Court may deem just and proper.

## Count III

(against Defendants Godinez, Lemke, Anderson, Johnson, Rabideau, Hardy, Siebers, Bowlin, Hawk, Montez and Lorence)

### Denial of Due Process in violation of The Fourteenth Amendment

99. Plaintiff repeats and realleges paragraphs 1 through 98 as though fully stated herein.

100. As described herein, Defendants repeatedly either failed to respond to, denied or refused to allow Plaintiff protective custody request, grievances and appeals for arbitrary, inaccurate and unfounded reasons. Defendants actions violated provisions of the Illinois administrative code setting out rules for handling protective custody request and inmate grievances, including, but not limited to, 20 Ill. adm. code §§ 501.305, 501.310, 501.320 and 504.830, 504.840 and 504.850 respectively.

101. Defendants have denied Plaintiff the right of protection, as described above, in violation of regulations including, but not limited to 20 Ill. adm. code § 501.320 (a). Plaintiff exhausted his administrative remedies with respect to his P/C request when

The ARB on August 21, 2013, denied Plaintiff's March 17, 2013 appeal without considering the threats Plaintiff disclosed to them in that document. The ARB also refused to consider grievance # 87 in regard to Plaintiff living conditions on May 23, 2012, emergency grievances # 4340 and # 4356, when both the ARB and Director Gardiner did nothing while Stateville grievance officer has yet to respond regarding deprivations in Plaintiff's living conditions. (Exhits H and I).

112. These actions and inactions constitute denials of procedural due process guaranteed to Plaintiff by the Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully request the following relief:

A. General damages against each Defendant, jointly and severally, in an amount not less than $ 20,000.00 each.

B. An aware of punitive damages against each individual Defendant in an amount appropriate to punish each individual Defendant and deter others from engaging in similar misconduct;

C. Attorney's fees, cost and expenses as authorized by 42 U.S.C. § 1388 and as otherwise authorized by statute and law;

D. A permanent injunction prohibiting Defendants from retaliating against Plaintiff for exercising his rights and requiring Defendants to receive and promptly process Plaintiff P/C request and place him in a safe environment;

E. Any other relief that this Court may deem just and proper.

Count IV

(against all Defendants)

Retaliation in Violation of the First and Fourteenth Amendments

103. Plaintiff restates and realleges paragraphs 1 through 102 as if fully set forth herein.

104. Plaintiff exercised his right to file grievances for the redress of injuries and wrongs experienced while in the custody of IDOC including grievances describing Defendant's deliberate indifference to his safety and well-being and the lack of efficacy of certain IDOC officials in dealing with dangers to his safety. Plaintiff's grievances and complaints addressed matters of public concern.

105. Because these grievances and protective custody documents created a record of Defendants' unlawful acts and because Defendants ordered IDOC staff and employees not to process Plaintiff protective custody request nor make the effort to adequately investigate and act upon Plaintiff's grievances and complaints, Defendants retaliated against Plaintiff by thwarting and/or ignoring Plaintiff's request for protection and grievance despite their knowledge that Plaintiff would likely suffer bodily harm if not protected.

106. Plaintiff's grievances and complaints are protected by the First Amendment and Defendant's conduct is designed to deter Plaintiff and others from exercising their First Amendment rights in the future. Defendant's means of retaliation—declining to protect Plaintiff from imminent bodily harm—would deter a person of ordinary firmness from exercising his rights.

107. Plaintiff's filing of grievances constituted a substantial motivating factor for Defendant's retaliation, which violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

Wherefore, Plaintiff respectfully request the following relief:

A. General damages against each individual Defendant jointly and severally, in an amount not less than $ 20,000.00 each.

B. An award of punitive damages against each individual Defendant in an amount appropriate to punish each individual Defendant and deter others from engaging in similar misconduct;

C. Attorneys fees, cost, and expenses as authorized by 42 U.S. C. § 1988 and as otherwise authorized by statute and law.

D. A permanent injunction prohibiting Defendants from retaliating against Plaintiff for exercising his rights, requiring Defendants to place Plaintiff in protective custody and otherwise protect him from known and reasonably foreseeable threats including STG's whose members have expressed a desire to harm him, requiring Defendants to allow and not thwart Plaintiffs' P/c request and timely process Plaintiff grievances in accordance with Illinois law and grant Plaintiff a safe and somewhat decent living environment.

E. Any other relief that this Court May deem just and proper.

## Count V.
(against all Defendants)
Willful and Wanton Negligence

108. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 107 of this complaint as though fully set forth herein.

109. Defendants owed a duty to Plaintiff to protect him from foreseeable dangers posed by other inmates and IDOC staff.

110. Defendants breached their duties by ignoring the dangers to Plaintiff, failing to act to eliminate or dispel the dangers to Plaintiff posed by STG members, and other prison conditions, deliberately perpetuating dangerous conditions and policies at Statevill not allowing Plaintiff to request protective custody, ignoring or denying Plaintiff's grievances without any basis in law or fact, and failing to provide Plaintiff somewhat decent living conditions.

111. Defendants acted with knowledge that their conduct posed a high probability of serious physical harm to Plaintiff, and thus breached their duties willfully and wantonly.

112. Plaintiff has exhausted numerous grievances he has filed in attempts to compel Defendants to protect him.

113. By breaching their duties to Plaintiff, Defendants actually and proximately caused the threat upon Plaintiff life. The threat Plaintiff faces at the hands of STG members were reasonably foreseeable consequences of the named Defendants' acts and omissions.

WHEREFORE, Plaintiff respectfully request the following relief.

A. General damages against each Defendant, jointly and severally, in an amount not less than $ 20,000.00 each.

B. An award of punitive damages against each individual Defendant in an amount appropriate to punish each individual Defendant and deter others from engaging in similar misconduct;

C. Attorney's fees, cost, and expenses as authorized by 42 U.S.C. § 1988 and as otherwise authorized by statute or law;

h. a permanent injunction prohibiting Defendants from retaliating against Plaintiff for exercising his rights in any of the manners described herein and requiring Defendants to place Plaintiff in protective custody and otherwise protect him from known and reasonably foreseeable threats including STBs whose members have expressed a desire to harm him;

8. Any other relief that this Court may deem just and proper.

Dated: November 18, 2013

Respectfully submitted,

_Stanley Boclair A-60451_

Plaintiff

Dated: NOVEMBER 18, 2013

Respectfully submitted,

Stanley Buclair

Stanley Buclair A 60451

Stateville Correctional Center

Box 112

Joliet, I.l. 60434

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged upon information and belief, and, as to those, I believe the same to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed by me at Joliet, Illinois on this 18th day of November, 2013.

Stanley Buclair

Stanley Buclair

F-126

Exhibit A-2

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

**Offender:** _Jordan_ _Stanley_ _A60451_
Last Name       First Name       MI       ID#

**Facility:** _Stateville_

☐ Grievance: Facility Grievance # (if applicable) _87_ Dated: _5/2/12_ or ☐ Correspondence: Dated: _____

Received: _5/15/12_ Regarding: _Cell Assignment - in danger as 1/4_
Date

The attached grievance or correspondence is being returned for the following reasons: _is housed in a cell w/ 1/4 Jones._

**Additional information required:**

☐ Provide a copy of your written Committed Person's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Committed Person's Grievance Report, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
     Office of Inmate Issues
     1301 Concordia Court
     Springfield, IL 62794-9277

**Misdirected:**

☐ Contact your correctional **counselor** regarding this issue.

☐ Request restoration of Good Conduct Credits (GCC) to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the **Record Office** with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to: Illinois Prisoner Review Board
     319 E. Madison St., Suite A
     Springfield, IL 62706

**No further redress:**

☐ Award of Meritorious Good Time (MGT) and Statutory Meritorious Good Time (SMGT) are administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____ / _____ / _____ .
                                    Date

☑ No justification provided for additional consideration.

Other (specify): _As offender is in Cell F-1-26 and 2 offender Jones is not._

Completed by: _Gina Allen_      _Gina Allen_      _5/23/12_
         Print Name                  Signature              Date

Distribution: Offender
            Inmate Issues            *Printed on Recycled Paper*            DOC 0070 (Rev. 8/2010)

exhibit: a

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: Jan. 10, 2012 | Offender: (Please Print) Boclair | ID#: A60451 |
|---|---|---|

| Present Facility: Stateville | Facility where grievance issue occurred: Stateville |
|---|---|

**NATURE OF GRIEVANCE:**

GRIEVANCE OFFICE

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ Disability
☒ Staff Conduct ☐ Dietary ☒ Medical Treatment ☐ HIPAA
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coord.nator 8 2012 ☒ Other (specify): Litigation / Roaches

Retaliation for Abuse

☐ Disciplinary Report: _____
Date of Report          STA #  **87**  Facility where issued

Note:   Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** Upon being made to wait nearly 3 hours after returning from the hospital I was informed Mrs. Ada Johnson was locating me a "suitable cellmate" I was then (four staff members literally took my property bulldozed there way through inmate Jones) placed in the cell with the violent avowed racist. Jones had recently assaulted security staff while in segregation and Mrs. Johnson had previously and intentionally avoided putting any Blacks in the cell with Jones for more than 30 days. I am subjected to his vile, abusive verbal views on Jews, Blacks and those with a different sexual orientation. He constantly assaults my heritage in provocation and loudly engages his like-minded fellows across the opposite side of the cellhouse while I rest or offer my salat.

**Relief Requested:** Constitutional entitlements and humanity be observed while in custody.

☒   Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Stanley Boclair | A-60451 | 1 / 10 / 12 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

| **Counselor's Response (if applicable)** |
|---|

Date Received: 2, 14, 12    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

**Response:** In a maximum security prison I'm is not allowed to pick cellmates & cellhouse placement. Placement Officer is employed to do just that based on knowledge & experience. Prior medical grievance has been forwarded to Health Care for your med issues

| J. ThRow | | 1, 18, 12 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

| **EMERGENCY REVIEW** |
|---|

Date Received: 1, 18, 12    Is this determined to be of an emergency nature?    ☐ Yes; expedite emergency grievance
☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Marcus Hardy | | 1, 19, 12 |
|---|---|---|
| Chief Administrative Officer's Signature | | Date |

MAY 15 2012

**ILLINOIS DEPARTMENT OF CORRECTIONS**
## OFFENDER'S GRIEVANCE (Continued)

There is a massive infestation of roaches in the cell with the aggist. Counting (13) killed in the bed while I slept, staining my underwear and sheets in bug juice, dropping from the upper bed and ceiling into my food tray as I attempt to eat. All this psychological and emotional abuse is designed by Warden Hardy / Ada Johnson, to accompany the physical attacks (Feb. 1, 2011 and Dec. 22, 2011) they have foresaw upon me, because of their smallness, unprofessionalism and recklessness in retaliating against me for filing grievances and doing pro se litigation against Warden Hardy while in the protective custody unit. Two severe head injuries in ten months, both times I better passed out and had vomiting - No medical follow-up is ever forthcoming (not even an asperin was given after the Dec. 22, 2011 beating with a sock full of batteries, which left a one inch gash between my eyes in the forehead, left side of head swollen from the temple to the back, both eyes and nose swollen shut along with an upper lip on christmas day) though I've repeatedly informed medical staff my long-term memory is damaged and I suffer constant pain and pounding pressure in my head since these attacks began. Medical staff visit the cellhouse concealing their identity turning their I.D.'s backwords and refusing to give their name as they deny any immediate medical care saying when asked, "I'm the nurse on the gallery" as was told to me on christmas day with blood leaking from swollen wounds. The conduct of this Warden, who continues to affix actively violent individuals upon me is going to cause the death of someone I only pray my life is not lost in the fray. I am housed in an environment (prison officials knew in advance of both attacks in F-house) where my enemies abound, and they kill, they have killed in society and have thought nothing of attempting to injure due to 2 death in the 30 years I have known them in prison, where now this Warden and placement officer (Ada Johnson) will undoubtedly let loose lethal circumstances upon me. In the cell. Allah / God, is my armour.

ILLINOIS DEPARTMENT OF CORRECTIONS

## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report |
|---|

**Date Received:** 1/18/12     **Date of Review:** 5/2/12     **Grievance #** (optional): 87

**Committed Person:** Stanley Boclair       **ID#:** A60451

**Nature of Grievance:** Cell Placement

**Facts Reviewed:** Grievant complains that he was placed in a cell with Offender Jones, who he claims is a racist. He wants to be moved to another cell as he feels his life is in danger.

**TA Counselor Dethrow's Response:** In a maximum security prison inmates are not allowed to pick cellmates and cellhouse placement. Placement Officer is employed to do just that based on knowledge and experience. Prior medical grievance has been forwarded to the Health Care Unit for you medication issues.

OTS reflects grievant is not celled with Offender Jones.

**Recommendation:** No issue appears to exist at this time.

Anna McBee, CCII
     **Print Grievance Officer's Name**        _Anna McBee_     **Grievance Officer's Signature**
**(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)**

| Chief Adminisrative Officer's Response |
|---|

**Date Received:** 5/3/12     ☑ I concur     ☐ I do not concur     ☐ Remand

**Comments:**

_Marcus Hardy_ 4KS      5/3/12
   Chief Administrative Officer's Signature                 Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_Stanley Boclair_       A-60451       May 13, 2012
   Committed Person's Signature         ID#             Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

F126

| Date: Jan. 18, 2012 | Offender: Bochian (Please Print) | ID#: A60451 |
|---|---|---|

| Present Facility: Stateville | Facility where grievance issue occurred: GRIEVANCE OFFICE Stateville |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time FEB 2012
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify): Denial Health Care

STA# **276**

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report          Facility where issued

GRIEVANCE OFFICE
FEB 15 2012
STA # M557

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: After Repeatedly asking c/o Lazard to allow me to go to Health Care on my scheduled 1:00 Jan. 13, 2012 call pass, he finally told me at 1:15 p.m. I couldn't go, but that I had to move to another cell, when he located one, I explained to him I was suffering pain and pressure from severe head trauma and I needed the medical care he told me it would have to wait, but instructed me to enter a "condemned" cell while he contacted the placement officer to find me a cell. He returned telling me this was the cell Ida Johnson / Placement officer assigned for me to live. The sink water in this cell would run into the toilet and over-flow it because the timer wouldn't go off until one minute or more, if you flushed the toilet, the water in

Relief Requested: Hold accountable (though I know you was challenged to do so) those responsible for this abuse.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature: Stanley Bochian    ID# A60451    Date: 1/18/12

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 2/14/12    [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of this grievance has been forwarded to the HCU for review and response, and the original grievance has been forwarded to Grievance Office. There is no need to send your copy to the Grievance Office. You will receive your final response from their

Print Counselor's Name: J. Cathro    Counselor's Signature: [signature]    Date of Response: 2/14/12

---

**EMERGENCY REVIEW**

Date Received: 1/24/12    Is this determined to be of an emergency nature?
[ ] Yes; expedite emergency grievance
[x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature: Marcus Hardy    Date: 1/25/12

Distribution: Master File; Offender    Page 1    DOC 0046 (Rev. )

Printed on Recycled Paper

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE** (Continued)

the bowl would over-flow, the timer on the toilet wouldn't cut off for one minute. All the water would come up (feces, urine, soap and toothpaste) onto the floor. I couldn't drink, wash myself or relieve my bowel and begged to be put in a cell where the facilities worked. Being forced by nature to defecate and attend my hygienic needs I was seen dumping waste out the window as an over-flowing toilet flushed it up on the floor. C/o Lazard was informed come to the cell with an inmate to help me clean, but left me in the cell all on Jan. 14 2012. On Jan. 15, 2012, another inmate (Brown N71517) was placed in the cell, I pleaded with C/o Nushort not to be housed because of the conditions, but he said the Lieutenant had no choice. Immediately when the both of us began to use those broken facilities the entire cell became inundated in urine and excrement, as well as one third of the gallery before five correctional officers began to clean up and prevent so many other cells from being contaminated. Nothing was given to clean this cell (#209). The c/o's became angry saying I wasn't cooperating with how board it was on them. The next morning after washing to eat and clean my body, again, more feces, urine and other impurities flooded the cell washing upon the waste left the night before. C/o Lazard angrily scold me for washing my body and taking care of my hygiene. At 8:30 a.m. (Jan. 16, 2012) The same morning, (though no staff member ever offered the opportunity to bathe in the shower) Sgt. Severs ordered c/o Franco over the radio to remove me from the cell in nothing but shoes, T-shirt and pants, and placed me hand-cuffed, in an empty shower with a cracked ventilated window for five hours (until 2:00 p.m.) informing me not before putting me back in cell 209 which had not been cleaned to do anything but sleep and eat in the cell. On the 3-11 shift (Jan. 16, 2012) My cellmate washed for his hygiene and relieved himself over-flowing the cell and the gallery again, causing Sgt. Williams to first come to the cell and threaten us, "you better not touch anything in that cell," then c/o's Burknart, Cervantez and Vesper complained about how I only thought about myself and not them. Finally on Jan. 17 2012, at 1:30 p.m. c/o Lazard came to cell and informed me the placement officer was allowing me to go into another cell.

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report |
|---|

Date Received: 2/15/12          Date of Review: 10/2/12          Grievance # M557

Committed Person: Stanley BoClair          ID #: A60451

Nature of Grievance: Medical Treatment

**Facts Reviewed:** Grievant claims that on 1/18/12 he was supposed to be taken to the Health Care Unit at 1:00pm for an appointment, but was not taken. He wants staff held accountable. Also he feels he was placed in a condemned cell.

Per Medical Records, grievant's medical file indicates grievant was seen in urgent care on 1/31/12.

Per Unit F security staff, they do not recall any of the incidents cited in the grievance regarding being placed in a condemned cell with over flowing water and a toilet that did not work. Further no staff could recall any incident where the grievant was locked in a shower for five hours while still being handcuffed. OTS reflects grievant was in cell F206 until 2/2/12 and then moved to cell F126. Grievant Officer is unable to substantiate any staff misconduct.

*This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON recommendation / diagnosis.*

**Recommendation:**          No action at this time.

Anna McBee, CCII
_____          _____
Print Grievance Officer's Name          Grievance Officer's Signature
**(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)**

| Chief Administrative Officer's Response |
|---|

Date Received: 10/15/12          ☑ I concur          ☐ I do not concur          ☐ Remand

Comments:

_____          _____
Chief Administrative Officer's Signature          Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____          _____          _____
Committed Person's Signature          ID#  A-60751          Date  Nov. 7, 2012

Appendant to grievance # M-557

To ARB -

October 30, 2012

Prison and Placement records will indicate from Jan. 13-17, 2012, I was in cell 204 of F-house.

Inmate Brown N-71517, was taken from X-house PLC, and put in F-house cell 209 on Jan. 15, 2012.

Maintenance records show work-orders before Jan. 13, 2012 and after Jan. 17, 2012 for cell F-209.

On January 17, 2012, I was moved from F-209 to F-206. The grievance officer knows records reflect this truth.

Boclair A-60751



**Illinois**
Department of
**Corrections**

**PAT QUINN**
Governor

**S.A. GODINEZ**
Director

**1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844**

September 3, 2013

Stanley Boclair
Register No. A60451
Stateville Correctional Center

Dear Mr. Boclair:

This is in response to your grievance received on November 9, 2012, regarding conditions (broken toilets/sink in cell; not taken to health care on 1/18/12), which was alleged to have occurred at Stateville Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance Officer's Report (M557) and subsequent recommendation dated October 2, 2012 and approval by the Chief Administrative Officer on October 15, 2012 have been reviewed.

Your requested relief is that staff be held accountable.

Medical records reflect you were seen on January 31, 2012. Based on security issues, at times passes must be rescheduled.

Maintenance records reflect work orders were completed on January 21, 2012 and January 25, 2012. Repairs are scheduled and completed as expeditiously as possible.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be considered moot as matters were resolved.

FOR THE BOARD: _____
Terri Anderson
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
S.A. Godinez
Director

cc: Warden, Stateville Correctional Center
Stanley Boclair, Register No. A60451

EXHIBIT C
P-9(o)

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: NOV. 25, 2011 | Offender: (Please Print) Bdelair | ID#: A60451 | |
|---|---|---|---|
| Present Facility: Stateville | | Facility where grievance issue occurred: Stateville | GRIEVANCE OFFICE DEC 7 2011 |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA Retaliational C & E
- [x] Other (specify): Deprivations

- [ ] Disciplinary Report: ____/____/____
  Date of Report                     Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

Brief Summary of Grievance: Since my Nov. 1, 2011 request for Protective Custody, Warden Hardy and the placement officer (A. Johnson) have continuously and deliberately retaliated against me for filing grievances and being a pro se litigator inmate in the X-House Protective Custody unit, by placing me in F House general population with the violent Security Threat Group members who beat me unconscious on Feb. 1, 2011 and, where on 11-25-11 as I waited for my meal the worker came with only one tray, which was given to my cellmate, returning 15 to 20 minutes later with a tray when opened contained feces over the food, where inmates from (STG's) spit upon, threaten, taunt and take my property in view of staff and have came by my cell repeating comments and allegations made by me against staff in emergency grievances.

Relief Requested: Maybe they'll amend the state employee indemnification act!

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Stanley Boclair _____  A60451 ____ 11 / 25 / 11
Offender's Signature                           ID#              Date
                    (Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 12, 13, 11    [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to
                                                                                             Administrative Review Board, P.O. Box 19277,
                                                                                             Springfield, IL 62794-9277

Response: I answered this grievance on these issues.

E. Bitkiewicz _____    E. Rob _____    12 / 28 / 11
Print Counselor's Name               Counselor's Signature              Date of Response

---

**EMERGENCY REVIEW**

Date Received: 12/12/11    Is this determined to be of an emergency nature?    [ ] Yes; expedite emergency grievance
                                                                                                             [x] No; an emergency is not substantiated.
                                                                                                             Offender should submit this grievance
                                                                                                             in the normal manner.

Marcus Hardy _____    12, 12, 11
Chief Administrative Officer's Signature          Date

Distribution: Master File; Offender                    Page 1                    DOC 0046 (Rev. 3/2005)
                                                 Printed on Recycled Paper

Exhibit C

Constantly opening the cell door (most recently 11-23-11 7-3 shift C10 and 11-24-11 3-11 shift C10) for general population inmates who go to shower or docs. Where heater in the cell only simmers when it's on, as the window above it will not allow any warmth to be retained in the cell, pushing inclement weather in from the high air outside because of open ventilation. While the placement officer sent segregation releases, F house general population inmates, and new arrivals, who were not in Stateville prison on Nov. 1, 2011 when I requested protected custody, to X-house protective custody unit, falsely claiming an over-crowding issue, blatantly misleading and lying to my counselor in my Nov. 1, 2011 grievance, when its no excusable solution even for a day to violate the law by keeping me in general population after my request for protective custody.

EXHIBIT - C

United State District Court

Northern District of Illinois

Eastern Division

Stanley Boclair A60451)
            Plaintiff        )        Case # 11-C-5217
                             )
        v.                   )
                             )
Randle, et al.,              )        Declaration of
        Defendants.          )        ERIK BIRDSALL #B54736

ERIK BIRDSALL #B54736 _____ hereby declares:

Upon being placed in cell #460 of F-House in the general population of Stateville Correctional Center, on Nov. 3, 2011, after having requested protective custody since Oct. 24, 2011, I witnessed, and I am informed of the following events;

1) Cell #460 was a cell with a glass front, with over 25 window-squares missing, into which a person could reach up to his torso.

2) Many gang members came to the cell and said things and caused my cellmate (Boclair A60451) to tell me he was afraid for his life and that he had previously been beaten unconscious by these same individuals. The officers in the gun-tower would add to both our fears by constantly opening the doors as inmates were on the gallery.

3) On more than one occasion I was stunned to disbelief as staff members became short of food and supplies, after giving them to every other cell on the gallery (cells 59, 60 and 61 were the last cells on four (4) gallery, which had been Hearby had designated for protective custody inmates) saying they would try to find more, but going away, never coming back. This was only done to the protective custody inmates. C/O T. Jones would open the door, along with C/O's on Nov. 23, 2011 and Nov. 24, 2011, in some cases.

4) On Nov. 23, 2011, Boclair and myself were moved to cell 461 where that night c/o Anastacio, the gallery officer, delivered mail to Boclair from the Warden's office, containing a grievance decision made nineteen (19) days earlier by the Warden, which Boclair had c/o Anastacio acknowledge - point - of - custody.

5) I _____ am also informed of the occasion on the morning of Nov. 25, 2011, when after receiving my tray, the worker, having run short, returned some time later giving Boclair a tray with feces.

6.) Cell # 461 is a cell with a small 24 inch heater below a window, which prevents any warmth from being retained in the cell because of the open ventilation of the entire window fixture, inclement weather blows in constantly, to the point where you can't stand at the sink to drink a cup of water. To lower your pants to sit on the toilet is freezing torture. Numerous times staff were made aware and nothing is done.

7.) Each inmate in the F House is afforded and daily offered religious service, outside recreation and regularly scheduled law library access, except the protective custody designated inmates.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Joliet, Illinois on  NOV 29 2011

Erik Birdsall  # B54736

United States District Court
Northern District of Illinois
Eastern Division

Stanley Boclair A60451
        Plaintiff

                    v.


                                Declaration of
                                Charles Byrd N-80703

Charles Byrd II    Hereby Declares:

During the fall and winter of 2011 - 2012, while incarcerated at the Stateville Correctional Center's F House in cell F125 the windows couldn't close out wintry 20 and 30 degree cold because of cracks in the glass, no material in the framework for sealing and an heater directly below the window underneath a two-ledge counter which would simmer but not warm the cell, with heavy wool blankets tied to the bars in front of the window with string, unless the temperature would rise to 40 degrees without strong wind gust. The cells are inundated with roaches in every fixture in the cell F125 (counter, bed, sink and toilet) crawling about you at meals and at rest. During this period no exterminating took place, instead, a bag with residue from freshly eaten chips (crumbs to bring them with the aroma and the oil or grease to prevent crawling out) would sit upright for one or two days encasing one to 300 live roaches in the bottom of the bag, which would be flushed down the toilet. From the ceiling light and electrical outlet come roaches.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Joliet, Illinois on    8-29-2012

Charles Byrd N80703

United States District Court
Northern District of Illinois
Eastern Division

Stanley Boclair A60451
Plaintiff

v.

Declaration of
Charles Gardner #B-23015

Charles Gardner #B-23015 ___ Hereby Declares:

During the fall and winter of 2011 - 2012, while incarcerated at the Stateville Correctional Center's F House in cell 127 the windows couldn't close out wintry 20 and 30 degree cold because of cracks in the glass, no material in the framework for sealing and an heater directly below the window underneath a two-ledge counter which would simmer but not warm the cell, with heavy wool blankets tied to the bars in front of the window with string, unless the temperature would rise to 40 degrees without strong wind gust. The cells are inundated with roaches in every fixture in the cell 127 (counter, bed, sink and toilet) crawling about you at meals and at rest. During this period no exterminating took place, instead, a bag with residue from freshly eaten chips (crumbs to bring them with the aroma and the oil or grease to prevent crawling out) would sit upright for one or two days enticing one to 300 live roaches in the bottom of the bag, which would be flushed down the toilet. From the ceiling light and electrical outlet came roaches.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Joliet, Illinois on ___ 2-28-2012

Charles Gardner #B-23015

EXHIBIT-Q

**OFFENDER'S GRIEVANCE**

| Date: June 30, 2013 | Offender: (Please Print) Boclair | ID#: A-60451 |
|---|---|---|

| Present Facility: Stateville | Facility where grievance issue occurred: Stateville |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify) Protection from STG

GRIEVANCE OFFICE

- [ ] Disciplinary Report: _____
  Date of Report _____ Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

2028

**Brief Summary of Grievance:** Since August 2010, while continuously requesting protective custody in Stateville, prison staff and employees have allowed and orchestrated violent assaults against me. Again, you Warden Lemke, on June 26, 2013, denied me protection from Security Threat Groups (STG) in Stateville and in F-House where there is no practical protocol for my safety under the provisions of 20 Ill. Adm. Code 501.300 subpart D. In particular, on June 20, 2013, an African American C/O opened my cell door instructing me off the gallery in one direction to report to the cellhouse door to be taken to the health care unit, while he went in another direction. Immediately I was joined by general population inmates from 4, 3 and 2 galleries. At the cellhouse door I was placed in the bullpen with two other general population inmates until another

**Relief Requested:** I have 14 Amendment rights and request transfer to the protective custody facility at Pontiac.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Stanley Boclair | A-60451 | 6, 30, 13 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 7, 31, 13    [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Although offender is not approved group 3 PC (he keeps getting denied) he remains in PC with all the same protections. He is now in F-house and may continue to request PC status.

| Kim Duvall | K Duvall | 7, 31, 13 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: 7, 11, 13

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Michael Lemke | | 7, 11, 13 |
|---|---|---|
| Chief Administrative Officer's Signature | | Date |

African American C/O came and ordered the three of us to be escorted to the HCU. Upon entering the HCU C/O Nelson Holman #5068 (a defendant in one of the above mentioned assaults, Stanley Boclair v. Marcus Hardy, et al. 11-C-5217) ordered the three of us into the large general population bullpen which contained 23 to 27 inmates. I cautioned C/O Holman not to put me in the general population area for fear of my safety, and I **reminded** him when he became upset, that it was I, and not his fellow officers, of P/C procedure. Repeatedly I have filed grievances to be given P/C and removed from F-House where Warden Lemke and the Director of IDOC literally place P/C inmates side-by-side with general population. Prison officials will not protect me or transfer me upon request to a safe facility (February 18, 2013 and June 30, 2013 letters to CWS Jerry Baldwin, Counselor Hall and Assistant Warden O'Brien) but maintain me in a prison, where twice I was injured, suffer tormenting images and screams in my sleep and fear the potential of the coming attack. STG members will harm me in Stateville.

EXHIBIT H

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE**

| Date: March 1, 2012 | Offender: (Please Print) Boc lair | ID#: A 60151 |
|---|---|---|
| Present Facility: Stateville | Facility where grievance issue occurred: | Stateville |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA Denial To grievance
- [x] Other (specify): Procedures

- [ ] Disciplinary Report: _____ / _____ / _____
  Date of Report                    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** To: Administrative Review Board

| Date of Grievance | Subject | Date submitted |
|---|---|---|
| Oct. 7, 2011 * 4024 | law library / Protective Custody / Staff Conduct | 12-18-11 |
| Nov. 1, 2011 * 4023 | Protective Custody | 12-18-11 |
| Nov. 2, 2011 * 4340 | Staff Conduct | 12-27-11 |
| Nov. 20, 2011 * 4340 | Unsafe cell conditions / Property lost | 12-27-11 |
| Nov. 21, 2011 * 4340 | denied law library / visit / Religious Services | 12-27-11 |
| Nov. 25, 2011 * 4356 | Retaliations / deprivations | 12-27-11 |
| Dec. 6, 2011 * 4391 | P/c in the cell w/Gen. pop | 12-27-11 |

The grievance officer has custody of the above cited seven (7) emergency grievances

**Relief Requested:** Process my grievances!

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Stanley Boclair                          A 60451          03 / 1 / 12
Offender's Signature                     ID#                   Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: _____ / _____ / _____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response: _____ / _____ / _____ |

---

**EMERGENCY REVIEW**

Date Received: _____ / _____ / _____

Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature _____    Date _____ / _____ / _____

beyond the expiry provisions of 20 Ill. adm. code 504.830 (d). There is no viable grievance process in the prison.

* denotes the # the Wardens Office assigned emergency grievances (# 1340 were designated duplicate grievances).

I have rights to administrative remedies and legal access. I have previously given this board evidence informative that my constitutional entitlements are trampled upon. While constantly the grievance officer (on each grievance rarely returned) will back-date and/or return the grievance by prison mail with only a week or less in which time I have to appeal to the Director under 20 Ill. adm. code section 504.850 (a). this sentence has also previously been given to this board. These tactics are directly to impede and to prevent.

Exhibit I

Salvador A. Godinez, Director

Illinois Department of Corrections

Nov. 14, 2012

301 Concordia Court

Springfield, Il. 62794.9277


Dear Sir

The administrative review board has had custody of the following Nine (9) grievances beyond the expiry provisions of 20 Illinois Administrative Code Section 504.850 (f):

| Date of Grievance | Subject | Date Submitted |
|---|---|---|
| Nov. 2, 2011 * #4340 | Staff Conduct | Mar. 1, 2012 |
| Nov. 20, 2011 * #4340 | Unsafe conditions / Property lost | Mar. 1, 2012 |
| Nov. 21, 2011 * #4340 | denied law Lib., yard, religious service | Mar. 1, 2012 |
| Nov. 25 2011 #4356 | Retaliations / Reprivations | Mar. 1, 2012 |
| Dec. 6, 2011 #4391 | P/C in cell with general population | May 1, 2012 |
| April 21, 2011 G.O. #1892 | Staff Conduct | May 13, 2012 |
| Mar. 2, 2011 G.O. #1033 | Legal Mail Handling | May 18, 2012 |
| Feb. 21, 2011 G.O. # 892 | Mail Handling | May 18, 2012 |
| Feb. 27, 2011 G.O. # 974 | Mail Handling | May 24, 2012 |
| Dec. 11 2011 G.O. # 838 | Law Lib. denial / drop boxes | May 24, 2012 |
| Feb. 6, 2012 G.O. # 744 | Legal mail / Winters | May 24, 2012 |

* Denotes duplicate grievance designation (I disagree).

Note — The first five (5) grievances listed above are the basis of the March 1, 2012 grievance to the administrative review board, because the grievance officer at Stateville Correction Center (till the present day) has had custody of those five (5) grievances, without any response, beyond the expiry provisions of 20 Ill. adm. code section 504.830 (A).

Respectfully

Stanley Archie
A. 68151

cc
File
Vanessa Liebman, Esq.

Exhibit 4

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: February 7, 2013 | Offender: (Please Print) Boclair | ID#: A-60451 |
|---|---|---|

| Present Facility: Stateville | Facility where grievance issue occurred: Stateville |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA physical jeopardy
- [x] Other (specify)

- [ ] Disciplinary Report: _____ / _____ / _____
  Date of Report          Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

Brief Summary of Grievance: On February 6, 2013, I was informed by the IDOC of a decision
to deny my P/C request and put me in general population. Because of twice
being injured in Stateville by STG and others and the imminent risk to my
well being from Black Gangster Disciples / Black Disciples within Stateville and
the IDOC under Ill. adm. code section 501. 320, Since February 7, 2013, I've
requested P/C within Stateville. If you place me in a cellhouse or gallery in
general population you are exposing me to physical harm such as I suffered in
Stateville Feb. 1st 2011 and Dec. 22, 2011.
Note - This grievance establishes; Warden Lemke, Placement Officer, Lieutenant Kirk,
Sargeant Palmer and c/o Griffin #5022 are aware of P/C request.

Relief Requested: Protection under Illinois and federal law from violent Security Threat
Groups STG within the IDOC.

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Stanley Boclair | A-60451 | 2, 7, 13 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

| **Counselor's Response (if applicable)** | | |
|---|---|---|
| Date Received: _____ / _____ / _____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: _____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

| **EMERGENCY REVIEW** | | |
|---|---|---|
| Date Received: _____ / _____ / _____ | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

| Chief Administrative Officer's Signature | Date |
|---|---|

Distribution: Master File; Offender                    Page 1                    DOC 0046 (Rev. 3/2005)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence



**Offender:** _Boclair_ _Stanley_ _A60451_
　　　　　　　Last Name　　　　　First Name　　　MI　　ID#

**Facility:** _Stateville_

☑ Grievance: Facility Grievance # (if applicable) _____ Dated: _____ or ☐ Correspondence: Dated: _____

**Received:** _9/11/13_　Regarding: _Copy of Hearing decision_
　　　　　　　Date

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
Office of Inmate Issues
1301 Concordia Court
Springfield, IL　62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to: Illinois Prisoner Review Board
319 E. Madison St., Suite A
Springfield, IL　62706

---

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____ / _____ / _____ .
　　　　　　　　　　　　　　　　　　　　　　　　Date

☑ No justification provided for additional consideration.

---

**Other (specify):** _Copy Martin 9/6/13. Director's decision Stands._

**Completed by:** _Terri Anderson_　　　_Anderson_　　_9/18/13_
　　　　　　　　　Print Name　　　　　Signature　　　Date

---

Exhibit - K

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: August 25, 2013 | Offender: (Please Print) Boclair | | ID#: A-60451 |
|---|---|---|---|
| Present Facility: Stateville | | Facility where grievance issue occurred: Stateville | |

**NATURE OF GRIEVANCE:**

☐ Personal Property   ☐ Mail Handling   ☐ Restoration of Good Time   ☐ Disability
☐ Staff Conduct   ☐ Dietary   ☐ Medical Treatment   ☐ HIPAA
☐ Transfer Denial by Facility   ☐ Transfer Denial by Transfer Coordinator   ☒ Other (specify): Protective Custody

☐ Disciplinary Report: ____/____/____
                        Date of Report          Facility where issued

> **Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** On August 12, 2013, I went before an Administrative Review Board Hearing regarding my protective custody status. Mrs. Terri Anderson did the interview. I have the right to a written copy of any decision made by the ARB and Director Godinez (20 Ill. adm. code Section 504.850 (F)) But none was given. Eleven (11) days after the ARB hearing three c/o's told me I'm not allowed to request protective custody any more, in violation of (20 Ill. adm. code Section 501.320 (a)) and the 14th amendment to the U.S. constitution and Illinois constitution. Only Director Godinez and ARB can determine and inform me of decisions regarding my P/C status (20 Ill. adm. code Section 504.870 (a)(1). IDOC officials are deliberately trying to cause me harm.

**Relief Requested:** Give me written copies of any decision of my Aug. 12, '13, P/C status Hearing and unimpeded access to 20 Ill. adm. code protective custody provision, reviews and 14th amendment rights to protection under United States and Illinois law.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _Stanley Boclair_ | A-60451 | 8/25/13 |
|---|---|---|
| Offender's Signature | ID# | Date |

*(Continue on reverse side if necessary)*

---

**Counselor's Response (if applicable)**

Date Received: ____/____/____   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Inmate Issues

SEP 1 1 2013

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

Date Received: ____/____/____   Is this determined to be of an emergency nature?   ☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date |
|---|---|

Warden
Michael A. Lemke

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: August 25, 2013 | Offender: (Please Print) Boclair | ID#: A-60451 |
|---|---|---|
| Present Facility: Stateville | Facility where grievance issue occurred: Stateville | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [✓] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [✓] Other (specify) Deliberate Endangerment

- [ ] Disciplinary Report: _____ / _____ / _____
  Date of Report                    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** My safety is at imminent risk in Stateville general population. Since October 2008 I have continuously maintained my request for protective custody. Prison administrators and high ranking IDOC officials have denied me protection, allowed security threats groups and staff to orchestrate violent physical assaults upon me. On August 23, 2013, c/o Bowlin came to my cell and told me, "I know I will get in legal trouble but, you are not a P/C inmate and you are not allowed to request protective custody!" I informed c/o Bowlin I'm letting him know as a law enforcement officer I'm telling him specifically I'm requesting P/C at that very moment. c/o Bowlin said, "you can't do it, I don't want to hear it, you're not allowed!" Later, c/o Hawk collected from myself and seven other inmates (Burgund S1406B; Wells R10344;

**Relief Requested:** Stop denying my Illinois Constitution and 14th Amendment right to protection under law.

[✓] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Stanley Boclair                          A-60451                    8, 25, 13
Offender's Signature                        ID#                        Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

| Date Received: _____ / _____ / _____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

| Date Received: _____ / _____ / _____ | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

_____
Chief Administrative Officer's Signature                              Date

Exhibit L

Otis R74956; Williams B62026; Seay B83410; Lumas B87637;
P/C request forms Counselor Duvall issued on August 21, 2013, c/o Hawk telling me he would give them to the Counselor or internal affairs. Afterwards c/o G. Montez came to my cell and said, "no one is being allowed to request P/C, internal affairs and placement officer Rabideau will not accept any "P/C request!" These events took place in F-House where Warden Lemke maintained protective custody cells side by side with general population, which has been done over the months, in violation of 20 Ill. adm. code Section 501 subpart-D Protective Custody Protocols. All three (Rowlin, Hawk, Montez) I informed verbally I requested P/C. Warden Lemke and Director Godinez have numerous P/C request from me regarding my safety.

FUNKHOUSER VEGOSEN LIEBMAN & DUNN LTD.

55 West Monroe Street | Suite 2300 | Chicago, Illinois 60603

TEL : 312.701.6800 | FAX : 312.701.6801 | www.fvldlaw.com

FVLD

Seth A. Stern
312.701.6837
sstern@fvldlaw.com

September 19, 2013

**VIA CERTIFIED MAIL AND EMAIL**

James Patrick Doran
Illinois Attorney General's Office
100 West Randolph Street
12th Floor
Chicago, IL 60601-3218

*Re: Stanley Boclair v. Marcus Hardy, et al. - 11 C 5217*

Dear Mr. Doran:

We were able to speak to Mr. Boclair by telephone yesterday. Thanks for your assistance in arranging the call. Mr. Boclair has authorized us to send you the enclosed settlement documents but again emphasized that his agreement to the settlement terms was based, in part, on your and Mr. Huntley's assurances during the settlement conference that IDOC would abide by applicable regulations requiring it to process his protective custody requests and place him in protective custody upon request while the requests are being processed.

Mr. Boclair informs us that his most recent protective custody requests have still not been processed, that his grievances regarding the failure to accept such requests for processing have been denied by the warden, and that he has been housed with general population inmates since at least late August. We understand that there has been some turnover at Stateville and that the prison has recently been on lockdown but this does not excuse prison staff from complying with applicable law. We trust that you will do everything within your power to ensure that IDOC officials comply with Illinois law and with the representations made during the settlement conference regarding Mr. Boclair's right to request, and be placed in, protective custody.

Very truly yours,

Seth A. Stern

SAS/sko
Enclosures

cc: Mr. Stanley Boclair

EXHIBIT N

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: September 29, 2013 | Offender: (Please Print) Boclair | GRIEVANCE OFFICE A 6C451 |
|---|---|---|

| Present Facility: Stateville | Facility where grievance issue occurred: Stateville |
|---|---|

3080

**NATURE OF GRIEVANCE:**

| ☐ Personal Property | ☐ Mail Handling | ☐ Restoration of Good Time | ☐ Disability |
|---|---|---|---|
| ☒ Staff Conduct | ☐ Dietary | ☐ Medical Treatment | ☐ HIPAA Deliberate |
| ☐ Transfer Denial by Facility | ☐ Transfer Denial by Transfer Coordinator | | ☐ Other (specify): ENDANGERMENT |

☐ Disciplinary Report: _____ / _____ / _____
                 Date of Report                Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
*Grievance Officer,* only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** On September 3, 2013, I gave C/O Lorence and Sgt. Sievers my protective custody request documents which were not processed, leaving me exposed to security threat group attack designed by Director Godinez Terri Anderson Warden Lemke and Karen Rabideau in retaliation for my right or reckless or grievance.

**Relief Requested:** Protection under state and federal law from violent security threat groups and high ranking prison officials who intend harm done upon me.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Stanley Boclair | A 60451 | 9/29/13 |
|---|---|---|
| Offender's Signature | ID# | Date |

**(Continue on reverse side if necessary)**

---

| **Counselor's Response (if applicable)** |
|---|

Date Received: 11/14/13    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Offender was "ARB Kickout" on 2-13-13 and 8-23-13. The Administrative review board found no compelling reason to keep Mr. Boclair in PC. His requests have not gone on ignored.

| Kim Duvall | Kim Duvall | 11/14/13 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

| **EMERGENCY REVIEW** |
|---|

Date Received: 10/11/13    Is this determined to be of an emergency nature?    ☐ Yes; expedite emergency grievance
                                                  ☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Michael Lill (sr.) | 10/11/13 |
|---|---|
| Chief Administrative Officer's Signature | Date |

---

Printed on Recycled Paper

Exhibit D

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: October 6, 2013 | Offender: (Please Print) Buclair | | ID#: A-60451 |
|---|---|---|---|
| Present Facility: Stateville | | Facility where grievance issue occurred: Stateville | |

**NATURE OF GRIEVANCE:**

| | | | |
|---|---|---|---|
| ☐ Personal Property | ☐ Mail Handling | ☐ Restoration of Good Time | ☐ Disability |
| ☒ Staff Conduct | ☐ Dietary | ☐ Medical Treatment | ☐ HIPAA Denial of Grievance Process |
| ☐ Transfer Denial by Facility | ☐ Transfer Denial by Transfer Coordinator | | ☒ Other (specify): Process |
| ☐ Disciplinary Report: ____/____/____ Date of Report | | | Facility where issued |

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: To Administrative Review Board

| Date of Grievance | Subject | Date submitted |
|---|---|---|
| Feb 7, '13 Emergency Griev. # 633 | Physical Jeopardy | April 21, 2013 |
| June 30, '13 Emergency Griev. # 2028 | Protection from STG | August 4, 2013 |

The Grievance Officer has custody of the above cited Emergency Grievances beyond the expiry provisions of 20 Ill. Adm. Code Section 504.830 (d). This Board has been made aware on numerous occasions there is no viable grievance process in the prison.

Relief Requested: Process my grievances under the time frame of these claim provisions 20 Ill. Adm. Code provisions.

☒    Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Stanley Buclair     A-60451     10/6/13
Offender's Signature     ID#     Date

(Continue on reverse side if necessary)

| **Counselor's Response (if applicable)** | |
|---|---|
| Date Received: ____/____/____ | ☐ Send directly to Grievance Officer     ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
| Response: _____ | |

_____     _____     ____/____/____
Print Counselor's Name     Counselor's Signature     Date of Response

| **EMERGENCY REVIEW** | |
|---|---|
| Date Received: ____/____/____ | Is this determined to be of an emergency nature?     ☐ Yes; expedite emergency grievance     ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

_____     ____/____/____
Chief Administrative Officer's Signature     Date

Exhibit P
BOClair
F-344

ILLINOIS DEPARTMENT OF CORRECTIONS
**Protective Custody Status**
_____ Stateville _____ **Correctional Center**

---

**Offender's Request for Protective Custody (check one):** ☒ Placement or ☐ Release

I, _Stanley Boclair_    A.60451    F-344    hereby request to be
    Print Offender's Name     ID#     Cell/Unit

placed in or released from protective custody status for the following reasons (provide specific reason, including names, nicknames, and cell numbers of enemies, etc.). I understand I will remain in protective custody status until voluntarily released or until all administrative remedies sought have been exhausted.

Menard c.c. - August 2007 assaulted cellmate Jones R09492 (Bishop B.A.) after being smacked for warning him not to enter my property box G/D's & B/D's threatened my life for not letting them resolve issue; Stateville c.c. - Feb. 1, 2011 F-House yard kicked in head until unconscious by inmates stating they were G/D's, hospitalized four days; Stateville c.c. - Dec. 22 2011 F-House cell 361, staff & employees allowed Reese R62428 to enter cell and beat one inch gash in forehead with sock of batteries after he said he would. Threats on life 2011 by family & STG's for gang related conviction of inmate Riley's R002302 death 1984.

_Stanley Boclair_     3, 17, 13
    Offender's Signature     Date

---

**Complete for Initial Placement:**

The offender was initially placed in protective custody status on   3, 17, 2013   at _____ a.m. / p.m.
      Date       Time

☐ Shift Commander or Duty Administrative Officer notified:

_____ / _____ / _____   a.m. / p.m.
Name of Person Notified    Date    Time

_A. Hall_     _[signature]_
Print Name of Staff     Signature of Staff

---

**Facility Decision:**

Your request for ☐ release from / ☐ placement in or protective custody was reviewed by the facility on _____ / _____ and it was:
    (Date)

☐ Approved.
☐ Denied. You may immediately grieve this decision to the Administrative Review Board in accordance with DR 501 by so indicating below. If grieved, you will remain in protective custody status until a final decision is made by the Director.

_M. [signature]_     6 26, 13
Chief Administrative Officer's Signature     Date

---

**Offender's Acknowledgement:**

Please acknowledge receipt of this decision by signing below and indicating whether or not you wish to grieve this decision.

☒ I hereby grieve this decision to the Administrative Review Board. I understand the administration will forward this grievance to the Administrative Review Board; no other grievance form need be filed by me.

☐ I am not grieving release from protective custody status.

_Stanley Boclair_     6, 30, 13
Offender's Signature     Date

---

This decision was served to offender by:

_[signature]_     _A. Hall_     6, 6, 13
Print Name of Staff     Signature of Staff     Date

☒ Offender refused to sign. (Forward to the Administrative Review Board for final review and the Director's determination.)

**NOTE:** If grieved, the administration shall forward a copy of this form to the Administrative Review Board for direct review, attaching a copy of Protective Custody Status Review.

Distribution: Master File; Administrative Review Board, If applicable;    Printed on Recycled Paper    DOC 0054 (Rev. 3/2005)
     Offender

EXHIBIT - Q

## ILLINOIS DEPARTMENT OF CORRECTIONS
## HEARING OF ADMINISTRATIVE REVIEW BOARD
### Video Conference

*DATE OF HEARING*: August 12, 2013

*INSTITUTION:* Stateville Correctional Center

*GRIEVANT NAME*: Stanley Boclair, Register No. A60451

*BOARD MEMBERS PRESENT*: Terri Anderson, Administrative Review Board Chairperson, Office of Inmate Issues, Department of Corrections.

Grievant was personally interviewed by the Administrative Review Board. All information submitted to the Board by the Grievant, and the institution related to the issue being grieved, was reviewed. Issues warranting further action / consideration were discussed with the Stateville Correctional Center administration.

Nature of Grievance: Inmate Boclair is grieving denial of Protective Custody.

Findings: The Board notes the inmate is currently serving a Life sentence. Records reflect an admission date of January 8, 1982.

Grievant has been housed at the Stateville Correctional Center since August 11, 2010. Grievant has two declared enemies at Stateville. An affiliation with Gangster Disciple STG is noted.

The Board reviewed the Protective Custody Status sheet dated March 17, 2013 wherein grievant requested PC, stating; August of 2007 assaulted cellmate (Jones) after being smacked for warning him not to enter my property box. GD's & BD's threatened my life for not letting them resolve the issue. February of 2011 was kicked in head by inmates stating they were GD's. December of 2011, was beat with sock of batteries by Reese.

In accordance with DR 501.330, Stateville Correctional Center conducted a review of offender's PC request. Upon completion of the review it was recommended to which the CAO concurred on June 26, 2013, that the PC status/placement be denied.

Inmate's statement to ARB: I have had to suffer injury for my request to have merit. Can't go in to population at Menard or Stateville. At risk by the people I used to be with.

Offender Boclair recounted reasons as stated above. Boclair has been seen by the Board several times in the past wherein he cited the same reasons. None of these claims has been substantiated.

Recommendations: Based on a review of all information, it is the opinion of the Board that there is not sufficient information to warrant the offender's retention in Protective Custody and therefore should be released into general population.

*FOR THE BOARD:*  _____
Terri Anderson
Administrative Review Board Chairperson
Office of Inmate Issues

*CONCURRED:*  _S. A. Godinez_____ August 21, 2013
S.A. Godinez
Director

cc:  Warden, Stateville Correctional Center
Stanley Boclair, Register No. A60451

State of Illinois )
Will County )

AFFIDAVIT

I, Stanley Leclair, do hereby depose that the following statements are made from my personal knowledge and the following, are both true and correct and states as follows:

On July 30, 2013, while most of unapproved protective custody inmates and all of approved were moved to the X-Cellhouse, a group of ten to twelve unapproved protective custody inmates were held in F-House general population and verbally told by Major McGarvey, no unapproved P/C inmates in F-House would be allowed to physically access the prison law library, giving no reason for this denial of services.

On August 23, 2013, myself, Ronald Wells and several other unapproved protective custody inmates in F-House of general population, awaiting written decisions on our protective custody status, which shall only come from the Director of Illinois Department of Corrections and administrative Review Board (20 Ill. adm. code Section 504.850 (b), were told by three different correctional officers (Bowlin, Montez, Hawk) we were no longer considered unapproved P/C inmates but general population instead and, Placement Officer Rabideau and Internal Affairs said we would not be allowed to request protective custody again while in the prison.

Despite the assaults I've suffered and given no decision, to this day, on my protective custody status, high ranking prison officials are allowing the state of nature to take its course with the well-being of myself and Ronald Wells and other unapproved P/C inmates held in general population.

page 1

FURTHER   AFFIANT SAYETH NOT                          EXHIBIT   M

                                              RESPECTFULLY SUBMITTED

                                        /S/   Stanley Beclair A-60151


Subscribed and sworn to before me

on this 30 day of Aug 2013

_____
Notary Public


OFFICIAL SEAL
TYNEUR M. BUTLER-WINTERS
Notary Public, State of Illinois
My Commission Expires 2015

Exhibit X

K. Duvall, cc

To - Declain Aboasi FC360

Re - Safety

Date - Oct 31, 2013

I am submitting My 9-29-13 grievance concerning the failure to process My P/C request and Nacing Myself in Segregation because of the threats against Me in Stateville.

cc.
    File